United States Court of Appeals,

Fifth Circuit.

No. 92-4656

Summary Calendar.

Danny E. CRAIG, Plaintiff-Appellant,

v.

GREGG COUNTY, TEXAS, Defendant-Appellee.

April 8, 1993.

Appeal from the United States District Court for the Eastern District of Texas.

Before GARWOOD, JONES, and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Danny Craig, recently a candidate for constable in Precinct 4 of Gregg County, Texas, challenges the district court's refusal to award him attorneys' fees for prosecuting a Voting Rights Act case against the County. *See* 42 U.S.C. §§ 1971, 1973. Craig's lawsuit was filed only two weeks before the scheduled March, 1992 primary election and after the County had filed suit in the United States District Court for the District of Columbia seeking approval of its decennial redistricting plan. We hold that under the circumstances of this case, although Gregg County reconfigured Craig's Constable precinct (in a way that Craig approves), its action responded not to Craig's lawsuit but to objections lodged by the Justice Department during the District of Columbia lawsuit. Craig was therefore not a "prevailing plaintiff" and was not entitled to claim attorneys' fees from the County.

BACKGROUND

Following the release of 1990 census data, Gregg County prepared a revised redistricting plan for its County constable precincts and submitted the plan to the Justice Department for Voting Rights Act preclearance in early September, 1991. Voting Rights Act § 5, 42 U.S.C. § 1973c. The Justice Department failed to act on the plan within 60 days, as ordinarily required by the statute. As the March 10, 1992 primary elections approached, the County was growing impatient with the Justice

Department's delay, which threatened the possibility that an unprecleared election would be declared illegal. *See Chisom v. Roemer,* --- U.S. ----, ---- - ----, 111 S.Ct. 2354, 2367-68, 115 L.Ed.2d 348 (1991). Consequently, on February 24, 1992, the County filed a lawsuit in the United States District Court for the District of Columbia seeking a declaratory judgment that the 1991 redistricting plan was free from racially discriminatory purpose and effect. 42 U.S.C. § 1973c.

Three days later, appellant Craig filed suit in federal court for the Eastern District of Texas, alleging that the constable precinct districts adopted by Gregg County for the 1992 primary election violated the United States Constitution and the Voting Rights Act. Appellant moved for a preliminary injunction to prevent the primary election from taking place, but after a hearing, the district court denied this relief. The court noted that Craig's delay in filing his lawsuit made an injunction on the eve of the election inequitable.

A week after the election, the U.S. Department of Justice objected under § 5 of the Voting Rights Act to the County's proposed redistricting plan. Gregg County responded to the objection and revised the redistricting plan accordingly, resubmitting it about a month after learning of the objection. The Department of Justice then precleared the redistricting plan. Because of these events, the U.S. District Court for the District of Columbia promptly entered a stipulated order of dismissal of Gregg County's suit.

Attention was again directed to the recent election, since it had been held under the plan that was tainted with the § 5 objection. After negotiations, the County and Craig filed an agreed motion in the local district court, seeking an order for a special election under the new scheme. After a hearing, the district court denied the agreed motion. The court stated that it had earlier rejected the preferable remedy, a pre-election injunction, and nothing had occurred to change its mind in favor of voiding the actual election results. The court held that in light of the relevant factors, "the due process and equal protection rights of the voters and candidates in Gregg County do not require a special election." *See also, MAPAC v. Hale Co.,* CA 5-92-CV-0078-C (S.D.Tex. Nov. 5, 1992) (3 Judge Panel).

Although both parties had previously requested an award of attorneys' fees in their pleadings,

the issue was not raised during the hearing on the agreed motion. Later, the court ordered each party to bear its own costs and attorneys' fees. Craig's appeal is limited to the attorneys' fees issue. He also contends that the district court should have made *Johnson v. Georgia Highways,* 488 F.2d 714 (5th Cir.1974), findings in connection with his fee application.

DISCUSSION

Craig's claim is rooted in 42 U.S.C. § 1973*l* (e) of the Voting Rights Act. Despite the fact that he (a) failed to achieve preliminary injunctive relief, (b) failed to persuade the district court to enter an agreed order requiring a new election, and (c) suffered a dismissal with prejudice, Craig argues that he was "a catalyst in the creation of a new redistricting plan for Gregg County." He takes credit for the events that occurred in the District of Columbia lawsuit and the Justice Department preclearance process, contending that Gregg County modified the boundaries for Constable Precinct 4 after it "became aware that Craig intended to file suit."

Because the phrase "prevailing party" connotes the same general meaning under § 1973*l* (e) and 42 U.S.C. § 1988, cases under both Acts apply the same principles when determining plaintiffs' entitlement to attorneys' fees. *See Posada v. Lamb County,* 716 F.2d 1066, 1071 (5th Cir.1983). The Supreme Court recently undertook to clarify the definition of a "prevailing party" for awards of attorneys' fees under the analogous civil rights fee-shifting statute, 42 U.S.C. § 1988. In *Farrar v. Hobby,* --- U.S. ----, 113 S.Ct. 566, 121 L.Ed. 494 (1992), the Court held that the recipient of a nominal damage award might be denied an award of attorneys' fees even though he is a "prevailing party" under the statute. In so holding the Court explained that significant term as follows:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, ... or comparable relief through a consent decree or settlement ... Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement ... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. --- U.S. at ----, 113 S.Ct. at 573.

Based on *Farrar,* it is a close question whether Craig could under any circumstances qualify as a "prevailing party" in his Voting Rights Act case. He obtained no enforceable judgment against Gregg County. He obtained no relief through a consent decree or settlement. He obtained no direct benefit

from the lawsuit, because no new election was ordered. A more precise reading of *Farrar,* however, might suggest that a party may prevail, even in the absence of a judgment, consent decree, or direct personal benefit "if its ends are accomplished as a result of the litigation." *Associated Builders and Contractors v. Orleans Parish School,* 919 F.2d 374, 378 (5th Cir.1990) (citations omitted). To make a *prima facie* case of prevailing party entitlement to fees in the absence of such relief, the plaintiff must therefore show that he achieved the goal intended by the lawsuit, and his lawsuit "caused the defendant to remedy the discrimination." *Id.* Causation may be determined by considering the "chronology of events in order to assess the provocative effect of the plaintiff's lawsuit." *Hennigan v. Ouachita Parish School Board,* 749 F.2d 1148, 1152 (5th Cir.1985). Factors suggesting that plaintiffs are not entitled to fees include situations where a government entity is already "diligently working to have a [redistricting] plan submitted" when plaintiffs filed suit; the plan was complete by the time plaintiffs filed suit; and plaintiffs were not a "substantial factor or a significant catalyst" in creating a fair redistricting plan. *Posada v. Lamb County,* 716 F.2d, 1071-72 (5th Cir.1983).

While Craig now contends that the principal goal underlying his lawsuit was achieved by a realignment of the boundaries of Constable Precinct 4 favoring the election of a black candidate, he has not shown that *his suit caused* Gregg County to remedy the allegedly flawed voting scheme. Particularly, Craig failed to offer testimony concerning how he influenced the decisions of the Department of Justice or the district court of the District of Columbia. By the time Craig filed suit in local district court, Gregg County had already presented its proposed voting scheme to the Department of Justice over five months earlier. As the election approached, the County sought further assurances and filed suit in the District of Columbia. Only then, and virtually on the eve of election, did Craig file his own suit. A civil rights plaintiff would not be entitled to receive attorneys fees for demanding that Gregg County do something that it was going to do anyway. *See, e.g., Posada,* 716 F.2d at 1072. Late arrivers cannot jump the train as it leaves the station and hope to seize prevailing plaintiff status. *Posada,* 716 F.2d at 1071.

Although the plan was not complete by the time Craig filed suit, without evidence to the

contrary, it may be inferred that the train had been moving toward revision from the time the County submitted the original districting plan to the Department of Justice for approval. It may also be inferred that Gregg County was the catalyst toward the revised plan because it filed suit first in the "chronology of events." *See Associated Builders,* 919 F.2d at 378. That filing was logically linked to its earlier involvement with the Department of Justice.

Nor has Craig shown at what other point he was a significant catalyst toward the development of the new plan. To the extent that Craig seeks attorneys' fees for services performed during preclearance proceedings with the Department of Justice, Craig's argument is misplaced. "[F]ees may not be awarded to prevailing plaintiffs under the Voting Rights Act for services rendered in preclearance submissions to the Attorney General." *Arriola v. Harville,* 781 F.2d 506, 507-09 (5th Cir.), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986).

The district court did not articulate the basis for denying Craig's request for attorneys fees under § 1973*l* (e) and § 1988, but remand for further explanation is unnecessary. Craig failed to establish in the district court his entitlement to "prevailing party" status. For this reason, too, he could fairly be required to bear his own attorneys' fees and costs under the general rules of procedure. The district court did not err in so ruling.

The judgment of the district court is AFFIRMED.