Marguerite ZINN, by her legal guardian Shirley BLANKENSHIP, Elbert Perry, and Jessie Burt, by her next friend Richard A. Clem, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

Donna SHALALA, in her official capacity as Secretary of Health and Human Services and Cheryl Sullivan, in her official capacity as Secretary of the Family and Social Services Administration of the State of Indiana, Defendants–Appellees.

No. 93–3751.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1994.

Decided Sept. 2, 1994.

Kenneth J. Falk, Dennis K. Frick (argued), Legal Services Organization of Indiana, Inc., Indianapolis, IN, for plaintiffs-appellants.

James Goeser, Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, IL, for Donna E. Shalala.

Seth M. Lahn (argued), Office of Atty. Gen., Federal Litigation, Gordon E. White, Jr., Deputy Atty. Gen., General Litigation, Indianapolis, IN, for Cheryl Sullivan.

Before CUMMINGS, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case poses a question of first impression in our circuit—whether the Supreme Court's decision in *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), requires us to abandon our long-held rule that plaintiffs who attain the relief they seek through defendants' voluntary action can be "prevailing parties" for purposes of the civil rights attorney's fees statute, 42 U.S.C. § 1988.[1] We hold that it does not.

I.

Plaintiffs filed this class action lawsuit in February 1987, challenging a modification in the resource eligibility rules of the Indiana Medicaid Program that was to become effec-

---

**1.** 42 U.S.C. § 1988 provides:
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, the Religious Freedom and Restoration

Act of 1993, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

tive the following month. Prior to the change, real property that was either producing income or on the market to be sold at its fair market value was not included among an applicant's "available resources." The new rule abolished the protection of property that was for sale and adopted the "$6000/6%" rule for income producing property—only $6000 worth of property producing a return rate of at least 6% would be exempted. Class members were Indiana Medicaid applicants and recipients who would become ineligible under the new rule. On August 1, 1989, however, nearly two years into the litigation, the Indiana Department of Public Welfare reinstated the pre–1987 rule, and the case was voluntarily dismissed as moot.

Plaintiffs then sought to recover their attorney's fees from the Indiana defendant (Sullivan) under section 1988.[2] Citing the Supreme Court's decision in *Farrar*, the district court found that the plaintiffs were not "prevailing parties" for purposes of section 1988 because, although they had attained the relief they sought, they had not won an "enforceable judgment." The plaintiffs now appeal the district court's denial of their fees petition, and we reverse.

## II.

We have long recognized that a plaintiff may be a prevailing party for purposes of section 1988 even if the defendant voluntarily provides the relief sought rather than litigating the suit to judgment. *See, e.g., Stewart v. McGinnis*, 5 F.3d 1031, 1039 (7th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); *Nanetti v. University of Illinois*, 867 F.2d 990, 992–93 (7th Cir.1989); *Gekas v. Attorney Registration and Disciplinary Comm'n*, 793 F.2d

846, 849 (7th Cir.1986). In *Stewart*, we explained that plaintiffs seeking fees in such cases must satisfy two requirements:

> First, "the plaintiff['s] lawsuit must be causally linked to the achievement of the relief obtained," and second, "the defendant must not have acted wholly gratuitously, *i.e.* the plaintiff['s] claim[ ], if pressed, cannot have been frivolous, unreasonable, or groundless."

5 F.3d at 1039 (quoting *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564, 566 (7th Cir.1983)).[3] This approach, known as the "catalyst rule," is not unique to this circuit, but has enjoyed nearly unanimous approval in various forms from the other federal circuits as well. *See Baumgartner v. Harrisburg Housing Auth.*, 21 F.3d 541, 545 n. 3 (3d Cir.1994) (collecting cases). Indeed, even the Supreme Court has recognized that fees can be appropriately awarded when a suit has been mooted due to the defendant's voluntary action. In *Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987), for example, the Court noted:

> It is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988. A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—*e.g.*, a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

(citing *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).)[4]

---

**2.** Although a defendant in the underlying action, the federal secretary is not affected by plaintiffs' section 1988 petition and so has no interest in this appeal.

**3.** Although *Stewart* post-dated *Farrar*, we did not need to address *Farrar's* impact on the catalyst rule in *Stewart*, where we merely upheld the district court's finding that the plaintiff did not meet his burden of proof under the rule. We flagged the issue but did not resolve it in *Brown v. Griggsville Community Unit School Dist. No. 4*, 12 F.3d 681, 684 (7th Cir.1993).

**4.** In *Maher*, the Court stated:

> The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief."

Although not actually addressing the issue, *Farrar* included some language that can be read to conflict with the award of attorney's fees when defendants' action has been purely voluntary. *Farrar* discussed whether a plaintiff who had received nominal damages could be considered a prevailing party for purposes of section 1988. The Court held that although such plaintiffs were indeed prevailing parties, they nonetheless were not entitled to attorney's fees. In reaching that result, the Court reviewed its own prevailing party jurisprudence and derived this principle:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt [v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 2675–2676, 96 L.Ed.2d 654 (1987)], or comparable relief through a consent decree or settlement, *Maher v. Gagne,* 448 U.S. 122, 129 [100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653] (1980).

—— U.S. at ——, 113 S.Ct. at 573. The Court emphasized that " '[t]he touchstone of the prevailing party inquiry must be the · material alteration of the legal relationship of the parties' " (*id.,* quoting *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989)), and reasoned that:

> No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.

*Id.* —— U.S. at ——, 113 S.Ct. at 574. Based on those passages, the district court concluded that a voluntary change in the defendant's behavior could no longer suffice to confer prevailing party status, and that plaintiffs could not receive fees unless they had obtained an enforceable judgment. The Fourth Circuit, sitting en banc, recently reached the same conclusion by a vote of 7–6 in *S–1 and S–2 v. State Bd. of Educ. of N. Carolina,* 21 F.3d 49 (4th Cir.1994).

The Fourth Circuit is alone, however, in its reading of *Farrar.* The Third, Fifth, Eighth and Tenth Circuits have all held that their versions of the catalyst rule survive *Farrar.* . See *Baumgartner v. Harrisburg Housing Auth.,* 21 F.3d 541 (3d Cir.1994); *Craig v. Gregg County, Texas,* 988 F.2d 18, 20–21 (5th Cir.1993);[5] *Little Rock School Dist. v. Pulaski County Special School Dist., No. 1,* 17 F.3d 260, 263 n. 2 (8th Cir.1994); *American Council of the Blind, Inc. v. Romer,* 992 F.2d 249, 250–51 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993);[6]

---

448 U.S. at 129, 100 S.Ct. at 2575 (citing S.Rep. No. 1011, 94th Cong., 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5912).

As discussed below, the Fourth Circuit, sitting en banc, has disagreed with the reading of *Farrar* that we now adopt and, in so doing, also has disagreed with our reading of *Helms.* See *S–1 and S–2 v. State Bd. of Educ.,* 21 F.3d 49 (4th Cir.1994). The dissent to the original panel opinion in *S–1,* which was subsequently adopted by the en banc court and has been endorsed by our dissenting colleague, concluded that *Helms* had reserved judgment on whether voluntary defendant action can render a plaintiff "prevailing." See *S–1 and S–2 v. State Bd. of Educ.,* 6 F.3d 160, 171 (4th Cir.1993) (J. Wilkinson, dissenting). The portion of *Helms* cited in that opinion, however, reserves judgment only on the more limited question of· whether a party can prevail when the defendant voluntarily takes action that the complaint did not request. See 482 U.S. at 763, 107 S.Ct. at 2677. The above-quoted portion of *Helms* makes clear that the Court did not intend to suggest that whether a plaintiff can prevail when the defendant volun-

tarily provides the relief sought is an unresolved question.

**5.** Although *Craig's* holding is somewhat ambiguous, we read it to preserve the catalyst approach. (*Cf. Post* at 276 n. 1.) After recognizing that survival of the catalyst theory is "a close question" in light of *Farrar,* the court noted that "[a] more precise reading of *Farrar* . . . might suggest" that the theory remains valid. 988 F.2d at 20–21. True, the court's use of the term "might" tempers its conclusion that "a more precise reading" of *Farrar* would not preclude the catalyst approach. But the court proceeded to apply the catalyst test without reservation and without any indication that (as our dissenting colleague has suggested) its analysis was in some way conditional or useful only to show that because the plaintiff would lose in any event the *Farrar* question could be avoided. See *id.* at 21.

**6.** These cases, like our own, all involved purely voluntary action by defendants, without any judicial involvement by way of, for instance, a consent decree. This undermines Sullivan's argu-

see also Beard v. Teska, 31 F.3d 942, 951-52 (10th Cir. 1994). In addition, the First and Sixth Circuits have each cited *Farrar* for various purposes in cases that employ their catalyst rules, suggesting that although apparently not faced directly with the question, the courts perceived no outright conflict between the two. *See Paris v. United States Dept. of Housing and Urban Development,* 988 F.2d 236, 238 (1st Cir.1993); *Citizens Against Tax Waste v. Westerville City School,* 985 F.2d 255, 257–58 (6th Cir.1993).

We agree that *Farrar* does not preclude the award of fees when plaintiffs attain the relief they seek through defendants' voluntary action. We simply find it implausible that the Supreme Court meant to abolish a rule employed by nearly every circuit and previously recognized by the Court itself as "settled law," without expressly indicating that it was doing so. As the Third Circuit noted in *Baumgartner,* "it is not likely that the Supreme Court would overturn such a wide-spread theory without even once mentioning it, particularly when it was inapplicable to the case at hand." 21 F.3d at 547. And any possible doubt about the Court's intent is put to rest, in our view, by the fact that the same passages that have been read to preclude the award of fees when defendants have acted voluntarily are derived from and cite the very cases (*Helms* and *Maher*) in which the Supreme Court has approved that practice. *See Farrar,* —— U.S. at ——, 113 S.Ct. at 573; *see also supra* at 275.

## III.

We therefore hold that plaintiffs who attain the relief they seek through defendants' voluntary action may qualify for fees by way of the catalyst theory notwithstanding *Farrar.* We reverse the district court's holding to the contrary and remand for the court to determine whether the plaintiffs have prevailed under that approach.[7]

MANION, Circuit Judge, dissenting.

*Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), has placed the lower courts at a fork in the road by stating: "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The Plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement." *Id.* —— U.S. at ——, 113 S.Ct. at 573 (citations omitted). Several circuits, and now the Seventh, have declared or implied that this language is mere dicta and thus not a valid standard for determining a prevailing party. Instead, the so-called "catalyst rule" is still the proper test. (Opn. at 274.) *See Baumgartner v. Harrisburg Hous. Auth.,* 21 F.3d 541 (3d Cir.1994); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., No. 1,* 17 F.3d 260, 263 n. 2 (8th Cir.1994); *American Council of the Blind of Colo., Inc. v. Romer,* 992 F.2d 249, 250–51 (10th Cir.1993).[1] The Fourth Circuit, in a divided en banc decision,

ment that although *Farrar* may not completely preclude the catalyst approach, it requires some judicial involvement to support an award of fees.

7. The dissent contends that we should find for the state even under the catalyst approach. We disagree that the causal relationship between this lawsuit and the change in Indiana's policy can be properly evaluated in the absence of a factual record. True, the change in Indiana's policy was made possible by the change in federal law effected by the Medicare Catastrophic Coverage Act of 1988, which freed states to employ eligibility rules that were more liberal than those employed by the federal SSI program. But, although the change in federal policy may have enabled the state to alter its course, it did not *require* the state to do so. (*See* R. 14 at 3.) The change in federal policy alone does not therefore rule out the possibility that this lawsuit caused the change in Indiana policy, and there is certainly reason to believe that it did. As the plaintiffs have argued, for example, the timing of the rule change—one day prior to a scheduled status conference in this case—certainly suggests a causal relationship with this suit. There is nothing in the record suggesting that the state would have changed its rule in the absence of this suit or that it would have done so in a time frame beneficial to these plaintiffs. Never having addressed this issue, the district court made no factual findings in this regard. Because the current record does not provide a sufficient basis for doing so, a remand is necessary so that the district court can conduct an appropriate inquiry.

1. The court also cites *Craig v. Gregg County, Tex.,* 988 F.2d 18, 20–21 (5th Cir.1993). In *Craig,* however, the Fifth Circuit did not decide the impact of *Farrar.* Rather, it held that even under

*S–1 and S–2 v. State Bd. of Educ. of N.C.*, 21 F.3d 49, 51 (4th Cir.1994), has followed a different course.[2] In following *Farrar* that court held: "A person may not be a 'prevailing party' plaintiff under 42 U.S.C. § 1988 except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought...." I find the Fourth Circuit's analysis compelling and would thus follow its lead down that path less traveled. Because the Zinns have not obtained an "enforceable judgment, consent decree, or settlement," *Farrar*, —— U.S. at ——, 113 S.Ct. at 573, I conclude that they are not "prevailing parties."

Moreover, even under the expansive "catalyst rule" the Zinns fall short. The catalyst rule requires that "the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained." *In re Burlington N., Emp. Practices Lit.*, 832 F.2d 422, 425 (7th Cir.1987) (quoting *Harrington v. DeVito*, 656 F.2d 264, 266–67 (7th Cir.1981). The impetus for Indiana's change in its resource eligibility rules was not the Zinns' lawsuit; rather it was a change in federal law. Some additional facts help to understand the distinction. Prior to March of 1987, Indiana's Medicaid Program did not include as "available resources" real property that was either producing income or on the market to be sold at its fair market value. But after that date, the Department of Health and Human Services required Indiana to count these assets as "available resources." Accordingly, Indiana modified its resource rules to comply with federal requirements. The Zinns filed this class action challenging Indiana's modification. In their lawsuit the Zinns adamantly maintained that a ruling by a division of the Department of Health and Human Services caused Indiana to change its rules to the detriment of the Zinns. While the lawsuit was pending, the federal government passed

the Medicare Catastrophic Coverage Act of 1988. This caused Health and Human Services to change its rules, which enabled Indiana to return to its former and more generous method of determining eligibility. Indiana thus modified its "resource eligibility" rules so that once again real property that was either producing income or on the market to be sold at its fair market value was not included as "available resources." The parties stipulated that this case should be dismissed because the Act rendered the case moot. These facts demonstrate that the causal link to Indiana's modification of its "eligibility rules" was the change in the federal law, not the Zinns' lawsuit.[3] The Zinns, therefore, could not recover even under the catalyst rule.

For the above reasons I respectfully dissent.

---

the catalyst rule the plaintiff was not a "prevailing party."

**2.** The majority of the Fourth Circuit sitting en banc in *S–1*, 21 F.3d at 51, adopted as its own the dissenting panel opinion of Judge Wilkinson reported at 6 F.3d at 168–72. I too would adopt the reasoning in Judge Wilkinson's thorough analysis.

**3.** The Zinns argue that their lawsuit caused the change in "eligibility rules" because the Indiana Department of Public Welfare committed to returning to its old eligibility rules one day before a status hearing in their lawsuit. While the hearing could have provided a target date for the changes, it had nothing to do with the policy change brought about by the newly revised federal law.