Charles STEWART, Plaintiff–Appellant,

v.

Kenneth McGINNIS, Michael O'Leary, Thomas Roth, Darrell Cobb, Theophilus Smith, Melvin Allen and Marie Jordan, in their official and individual capacities, Defendants–Appellees.

Nos. 92–2926, 92–3206.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1993.

Decided Sept. 21, 1993.

Chris Averkiou, Chicago, IL (argued), for plaintiff-appellant.

Dan Softcheck, Asst. Atty. Gen., Diann K. Marsalek, Office of Atty. Gen., Brian F. Barov (argued), Office of Atty. Gen., Criminal Appeals Div., Chicago, IL, for defendants-appellees.

Before CUDAHY, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Charles Stewart is a prisoner in the Illinois Department of Corrections system ("IDOC"). From 1988 to July 1991, he was incarcerated at Stateville Correctional Center ("Stateville") in G Unit. From July 1991 to present, Stewart has been housed in Logan Correctional Center ("Logan"). On August 14, 1989, Stewart initiated this suit, pursuant to 42 U.S.C. § 1983, alleging that the defendants had violated several of his constitutional rights during his incarceration at Stateville. During the relevant time period, Kenneth McGinnis was IDOC Director and the remaining defendants were employees at Stateville. To remedy the alleged constitutional violations, Stewart sought money damages as well as injunctive and declaratory relief.

In his four count complaint,[1] Stewart alleged that his constitutional rights were violated at Stateville by the implementation of the following four IDOC procedures: shakedowns, segregation, lockdowns and prisoner discipline. After discovery was conducted, both parties filed motions for summary judgment. In a thorough opinion, the district court granted summary judgment for the defendants. *Stewart v. McGinnis*, 800 F.Supp. 604 (N.D.Ill.1992). In a separate order, the district court denied Stewart's mo-tion for attorneys fees, rejecting his claim that he was a "prevailing party" under 42 U.S.C. § 1988. Stewart appeals both adverse judgments.

## I. Standard of Review and Preliminary Matters

We review a grant of summary judgment *de novo*. *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 765 (7th Cir.1993). A grant of summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. In other the words, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "A party bearing the burden of proof on an issue may not simply rest on its pleadings, but must demonstrate that a genuine issue of material fact exists and requires trial." *Jamison–Bey v. Thieret*, 867 F.2d 1046, 1047 (7th Cir.1989).

Before we address the merits of Stewart's claim, we must first discuss the relationship between Northern District of Illinois Local Rules 12 M and 12 N and Federal Rule of Civil Procedure Rule 56. As noted, after discovery both parties filed motions for summary judgment pursuant to Rule 56. In accordance with Local Rule 12 M, both parties filed statements of undisputed facts with their summary judgment motions.[2] However, neither side filed the requisite Rule 12 N statements, contesting the other side's inventory of undisputed facts.[3] Given

---

1. The complaint to which we refer is actually the plaintiff's second amended complaint.

2. Local Rule 12 M provides:
   With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue.... That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

3. Local Rule 12 N provides:
   Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including in the case of any

these circumstances, the district court treated as true and admitted all the plaintiff's statements of fact which were supported by the record. Stewart is disgruntled because he believes that the district court should have treated all the statements in· his 12 M as true—regardless of whether the evidence in the record supported them. We disagree with Stewart's position.

In essence, Stewart asks us to literally construe the following portion of Rule 12 N:

> All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Under Stewart's view, the district court would have to treat as true even the most fanciful statements made in a Rule 12 M statement. We do not believe that such an interpretation is in line with our previous cases. Nor is it consistent with the language of Rule 12 M or the purpose of Rule ´56.

■ We have consistently held that the district court may strictly apply Rule 12 N and consider a party who fails to submit a Rule 12 N statement as having admitted the uncontroverted facts alleged in the opposing party's Rule 12 M statement. *Knox v. McGinnis*, 998 F.2d 1405, 1408 n. 8 (7th Cir.1993); *Brown v. United States*, 976 F.2d 1104, 1108 (7th Cir.1992); *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565, 567 (7th Cir.1992); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518–19 (7th Cir.1992); *Maksym v. Loesch*, 937 F.2d 1237, 1240 (7th Cir.1991); *Appley v. West*, 929 F.2d 1176, 1179 (7th Cir.1991); *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990).

■ However, we have also said that the district court should only consider facts as admitted if the allegations in the 12 M statement are "properly supported by references to the record or other evidentiary material." *Appley*, 929 F.2d at 1179–80. We believe this approach is sound and advances the goals of the rules of procedure at issue. Rule 12 M requires the moving party to support his statements of fact with specific references to the record. We do not believe that the opposing party's failure to file a 12 N statement relieves the movant of the necessity of supporting his 12 M statement. Rules 12 M and 12 N are designed to enhance the efficiency of the court system by putting the onus on the parties to identify material issues of fact for the district court. Permitting a party to move forward on unsupported allegations simply because the opponent failed to challenge them would obstruct the goal of efficiency.[4]

Furthermore, Stewart's position is also inconsistent with the goal of Rule 56:

> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Requiring the district court to take totally unsupported allegations as true would clearly impede the utility of having a summary judgment rule.

Federal Rule of Civil Procedure 83 requires Local Rules to be consistent with the Federal Rules of Civil Procedure. We agree with the Court of Appeals for the District of Columbia that Rule 83 requires us to interpret Rule 12 N "to mean that facts claimed *and adequately supported* by the moving party may be assumed by the District Court unless controverted by the opposing party." *McKinney v. Dole*, 765 F.2d 1129, 1135 n. 12 (D.C.Cir.1985) (interpreting a virtually identical local rule). *See also United States v.*

---

disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment.... All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

4. This conclusion also seems proper in that we have held an opposing party's Rule 12 N statement to be inadequate where it failed to provide cites to supporting record evidence. *Bell*, 896 F.2d at 1103.

*White*, 980 F.2d 836, 844 (2d Cir.1992) (circuit courts should avoid an interpretation of a local rule which would give rise to a conflict with the Federal Rules); *John v. State of Louisiana (Board of Trustees for State Colleges and Universities)*, 757 F.2d 698, 707 (5th Cir.1985) (rejecting construction of Local Rule which conflicted with Rule 56).

Based on the foregoing, we hold that the district judge properly treated as true only those facts in Stewart's 12 M statement that were properly supported by the record. We turn now to the merits of Stewart's claims. As mentioned, Stewart raised several constitutional issues in his complaint. The district court properly analyzed all of Stewart's claims and we affirm its analysis. Given the district court's thorough discussion, we feel compelled only to address Stewart's shakedown claim and the issue of attorneys fees; as for the other issues, we adopt the district court's opinion found at 800 F.Supp. 604.

## II. Shakedowns

Pursuant to the Illinois Administrative Code, Stateville authorities frequently conduct shakedown searches of prisoners' cells looking for contraband. Ill.Admin.Code tit. 20, § 501.220(b)(1).[5] Stewart's cell was searched on July 5, 1989 and May 24, 1990. Stewart alleges that in the first shakedown Stateville officers took a pair of blue jeans, an electric fan and legal papers, and threw them away. After the first search, Stewart was issued a "shakedown slip"[6] listing the following property as taken from his cell: 4 mattresses, 25 sheets, 4 pillow cases, 1 wooden rod, 3 pillows, 3 desks, 1 roll cart, 1 "letter telling about drugs" and an electric fan. The shakedown slip said nothing of blue jeans or legal papers. On July 12, 1989, Stewart received an adjustment committee hearing and was convicted of possession of unauthorized

property, including the fan.[7] On August 11, 1989, the electric fan, among other items taken from Stewart's cell on July 5, was disposed of as "broken junk."

As for the second shakedown, on May 24, 1990, Stewart alleges that a pair of blue jeans, a fingernail clipper, a hair tweezer, shoes and a jogging suit were taken from his cell. Stewart never received a shakedown slip for this property and no one knows what became of the items.

We first examine whether Stewart is entitled to money damages as compensation for the missing property for which no shakedown slip was issued. The failure to issue a shakedown slip violates IDOC procedure. Stewart argues that the failure to follow proper procedure deprived him of due process, because he received neither notice nor an opportunity to be heard. As a result, Stewart claims he is entitled to damages under § 1983.

*Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), applies here and Stewart's argument fails. *Hudson* held that a prisoner whose property had been intentionally destroyed during a shakedown search of his cell was not deprived of due process because the state provided an adequate postdeprivation remedy. *Id.* at 536, 104 S.Ct. at 3205. The Court reasoned that a predeprivation hearing was not required because it was impracticable, stating: "where the loss of property is occasioned by a random, unauthorized act by a state employee, rather than by established state procedure, the state cannot predict when the loss will occur." *Id.* at 532, 104 S.Ct. at 3203.

Stewart takes the position that because the shakedowns are regularly conducted pursuant to state regulation, the loss of property is authorized and predictable, not the result of

5. "Contraband" means items which are proscribed by criminal law, departmental or facility rules or posted notices; items for which a committed person has no authorization to possess; or property which is in excess of that which is authorized by the facility. Ill.Admin.Code tit. 20, § 501.210.

6. A state regulation requires prison employees conducting shakedown searches to complete a form for each prisoner describing any confiscat-

ed contraband. The slip must indicate the date and time of the search, the identities of the participating officers, and a list of the confiscated property. The slip must be given to the prisoner within a reasonable time after the search. Ill Admin.Code tit. 20, § 501.220(b)(6).

7. The adjustment committee is responsible for holding hearings regarding prisoner misconduct. Ill.Admin.Code tit. 20, § 504.80.

random, unauthorized action. Stewart's position is unsound. The shakedowns may be predictable; as we have noted, they are authorized by state regulation. However, the confiscation and immediate destruction of non-contraband property is not authorized, nor is it predictable. The Stateville officers who allegedly removed and destroyed Stewart's belongings did not follow state procedures, or they would have issued Stewart a shakedown slip for his confiscated property and placed the property in storage for the requisite 30 days. *See* ILL.ADMIN.CODE tit. 20, § 501.230. The officers' failure to comply with established regulatory procedure is indistinguishable from the random and unauthorized behavior described in *Hudson*.[8]

Having concluded that the destruction of Stewart's property was the result of random and unauthorized conduct, we need to decide if the state of Illinois provides an adequate postdeprivation remedy for Stewart. Stewart does not contend that he is without a postdeprivation remedy; in fact he is not—pursuant to statute he may file a tort claim in the Illinois Court of Claims. *See* 705 ILCS 505/8. Instead, like the plaintiff in *Hudson*, Stewart advances reasons why the state postdeprivation remedy is inadequate.

First, Stewart argues that the destruction of legal papers cannot be remedied by subsequent state judicial proceedings. The Supreme Court rejected an identical argument in *Hudson*, stating: "If the loss is 'incompensable,' this is as much so under § 1983 as it would be under any other remedy." 468 U.S. at 535, 104 S.Ct. at 3204.[9] Second, Stewart argues that he will have problems of proof in a state suit because no one believes an inmate. This argument is meritless. Stewart faces the same proof problems in any suit. Stewart falls far short of showing that his state court remedy is "inadequate to

the point that it is meaningless or non-existent." *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir.1990), *cert. denied*, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

In sum, we hold that because the state of Illinois provides Stewart with an adequate postdeprivation remedy, Stewart's due process rights were not violated when Stateville officers confiscated and destroyed his property in violation of IDOC regulations.

■ We now turn our attention to whether the disposal of Stewart's fan, confiscated in the first search, violated his due process rights. Implicit in Stewart's claim is an argument that his due process rights were violated even when Stateville officers followed IDOC procedures in disposing of his fan. This argument requires us to review more closely the IDOC procedures governing property confiscation and destruction after shakedowns. As mentioned, IDOC procedure provides that a prisoner should receive a shakedown slip after contraband property is removed from his cell during a shakedown. ILL.ADMIN.CODE tit. 20, § 501.220(b)(6). Once the property is confiscated, a prisoner has 30 days to file a grievance contesting whether the property is truly contraband. ILL.ADMIN.CODE tit. 20, § 501.230(c). If a grievance is filed, the property is stored until the grievance has been resolved. ILL.ADMIN.CODE tit. 20, § 501.230(f). If the prisoner is unhappy with the outcome, he may appeal to the Director of the IDOC. ILL.ADMIN.CODE tit. 20, § 504.850(a).

Once it is determined that a prisoner's property is unauthorized or contraband, the prisoner has 30 days to (a) have the property shipped to, or picked up by a designated individual, (b) request in writing that the property be destroyed, or (c) indicate, in writing, that he has filed a grievance.

---

8. As the district court noted, Stewart has failed to even raise a question as to whether Stateville had established a procedure under which employees predictably destroyed prisoner property. None of Stewart's Rule 12 M statements expressly allege such a policy, and those statements which address the predictability of the improper destruction of prisoner property are not supported by Stewart's cites to the record.

9. To the extent Stewart is claiming that the destruction of legal papers somehow denies his right of access to the courts, we reject his argument. To sustain an access to the courts claim, Stewart must allege that he was prejudiced by the denial of access; Stewart's failure to allege that he was prejudiced in any way is fatal to his claim. *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir.1992); *Hossman v. Spradlin*, 812 F.2d 1019, 1021–22 (7th Cir.1987).

ILL.ADMIN.CODE tit. 20, § 501.230(c). If the prisoner does none of these three things, the state may sell, destroy or donate the property. ILL.ADMIN.CODE tit. 20, § 501.230(e).

The record indicates that Stateville officers followed proper procedure regarding the confiscation and destruction of Stewart's fan. He received notice that his fan had been confiscated in the form of a shakedown slip. At an adjustment committee hearing, he was found to have possessed an unauthorized piece of property—the fan. At that point, Stewart had 30 days to file a grievance or make a written request regarding the disposition of the property. On July 16, Stewart sent a letter to O'Leary asking for help in getting his property back. Stewart asked that his letter be considered an "emergency" grievance.[10] Stewart did not notify the appropriate personnel that he had filed a grievance. Thus, 30 days later, on August 11, the fan was disposed of pursuant to regulation.

These events do not amount to a constitutional violation. Due process requires that Stewart have a meaningful opportunity to be heard on the issue of whether the fan was contraband. *See Castaneda v. Henman,* 914 F.2d 981, 985 (7th Cir.1990), *cert. denied,* 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1190 (1991). Stewart received a hearing on that precise issue during the adjustment committee meeting, at the conclusion of which he was convicted of possessing several items of contraband, including the fan. Stewart also had an opportunity to file a grievance regarding the decision that the fan was contraband. While he did initiate the grievance process, he failed to notify the proper person that a grievance was in the works. Thus, he lost his property, not because the state did not provide him an opportunity to be heard, but because he was unable to convince the factfinder that the fan was not contraband and because he did not follow the proper procedure for preserving his property while a grievance was pending.

The foregoing discussion explains why Stewart is not entitled to money damages; however, we must still determine whether he can obtain equitable relief. Given the fact that Stewart alleges injury both when IDOC procedures are followed and when they are not, we construe Stewart to be seeking two types of equitable relief: (1) an injunction enjoining the defendants from taking property during shakedowns without following established IDOC procedures, and (2) a declaration that IDOC procedures regarding the confiscation and disposal of property taken during shakedowns are unconstitutional. The district court concluded that Stewart lacked standing to seek injunctive and declaratory relief to change the procedures at Stateville because he had been transferred to Logan and thus could show no threat of immediate harm from Stateville employees. Stewart frames the issue differently. He contends that he is challenging the procedures of the IDOC as a whole, and that as an Illinois prisoner he has standing to do so.

As a § 1983 plaintiff, Stewart is entitled to injunctive and declaratory relief only if he has a personal stake in the outcome of the litigation. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). *See also Knox,* at 1413; *Robinson v. City of Chicago,* 868 F.2d 959, 966–67 (7th Cir.1989) (*Lyons* applicable to declaratory relief), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990); *Palmer v. City of Chicago,* 755 F.2d 560, 571 (7th Cir. 1985). The Supreme Court defined a personal stake as follows:

> Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*Lyons,* 461 U.S. at 101–02, 103 S.Ct. at 1665. Furthermore, evidence of past wrongs alone is insufficient to merit equitable relief. *Id.* at

---

10. Regulations permit an inmate to file an emergency grievance if there is a "substantial risk of imminent personal injury or other serious or irreparable harm." ILL.ADMIN.CODE tit. 20, § 504.840. O'Leary responded to Stewart in a letter which stated that the claim was not an emergency and was being referred to the regular grievance procedure. The record does not indicate what became of this grievance, nor is it relevant to our conclusion.

102, 103 S.Ct. at 1665; *Knox,* at 1413; *Robinson,* 868 F.2d at 966; *Palmer,* 755 F.2d at 571.

We recently addressed the issue of prisoner standing in *Knox.* In that case, the prisoner plaintiff claimed that Stateville officers had violated his Eighth Amendment rights during his placement in segregation by restraining him with a mechanism that included handcuffs, a waist chain and a "black box," an anti-lock picking device. He brought a § 1983 claim after he had been returned to the general prison population, seeking both money damages and an injunction prohibiting the use of the "black box." We held that he lacked standing to seek equitable relief because "the possibility that Knox would again be subject to the black box is ... speculative." *Id.* at 1414.

We believe the same conclusion is required in this case.[11] Stewart has failed to establish the requisite personal stake in the outcome of this litigation. All the defendants, save the Director of the IDOC, are employees at Stateville. Thus, the injunctive relief prayed for in the complaint is clearly directed at Stateville. Stewart is no longer there, nor is there any indication that he will be returned to Stateville any time in the future; therefore, Stewart is under no immediate threat of harm from official conduct at Stateville. *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir.1985) (prisoner lacked standing to obtain injunctive relief aimed at improving prison conditions because he had been transferred).

Moreover, even if we construe Stewart's complaint as seeking relief for the entire Illinois prison system, he still loses. At oral argument, Stewart's counsel contended that Stewart is under a real and immediate threat of harm from shakedowns because Illinois State law permits prisoners' cells to be shaken down every 60 days. The problem with Stewart's argument is that the harm he is complaining of is not the shakedown. Stewart admits that a surprise shakedown search of his cell does not violate his constitutional rights. *See Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). The constitutional violation Stewart alleges is that his property is confiscated and destroyed without affording him due process, either because guards fail to follow IDOC procedures or because IDOC's procedures are constitutionally infirm.

However, to demonstrate an immediate threat of harm under either theory, Stewart must show that there is a real likelihood that his property will be confiscated during future shakedowns. Stewart has failed to do so. Evidence of past wrongs is probative of whether there is a real and immediate threat of future injury. *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665. The record shows, however, that Stewart had property confiscated during a shakedown only twice in a year; during that time shakedowns were presumably conducted every 60 days.[12] We do not believe that this rate of incidence supports a conclusion that Stewart is under an immediate threat of harm. Stewart's 12 M statement contained only unsupported conclusory allegations that fail as well to demonstrate the threat of any immediate harm.[13]

Given Stewart's failure to allege the requisite threat of harm, Stewart is in the same position as the plaintiff in *Lyons.*

---

**11.** Stewart claims that *DeMallory v. Cullen,* 855 F.2d 442 (7th Cir.1988), mandates a different conclusion. Given the fact that standing was not discussed in that case, we decline to follow what Stewart claims is an implicit holding. Instead, we rely on the thorough and thoughtful analysis set out in *Knox. See also Martin v. Davies,* 917 F.2d 336, 339 (7th Cir.1990) (plaintiff's claim for injunctive relief moot because he had been transferred to a different prison).

**12.** An IDOC Policy Directive requires the Chief of Security to "ensure that each inmate's living area is searched no less than one time each 60 day period." IDOC Administrative Directive No. 05.01.111.

**13.** The following two statements are the closest Stewart comes to making a showing of imminent harm:

> The shakedown is expected to involve the taking of property from the prisoners. I. ¶ 29. During shakedown searches, we have a substantial likelyhood [sic] of serious losses to prisoners. I. ¶ 66.

Neither of these statements is supported by the citations to the deposition testimony Stewart provides. Nor has our review of the record found support for these statements.

Absent a sufficient likelihood that he will be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who [do] no more than assert that certain practices of law enforcement officers are unconstitutional.

*Lyons,* 461 U.S. at 111, 103 S.Ct. at 1670. Therefore, we hold that Stewart lacks standing to pursue any type of equitable relief regarding his shakedown claim.[14]

### III. Attorneys Fees

■ Stewart argues that he is entitled to attorneys fees because he is a "prevailing party" under 42 U.S.C. § 1988. The district court disagreed and denied Stewart's motion for attorneys fees. "The standard of review of an award of attorneys' fees to the prevailing party under § 1988 is whether the trial court abused its discretion in making or denying the award." *Libby by Libby v. Illinois High School Ass'n,* 921 F.2d 96, 98 (7th Cir.1990). Generally, we only find an abuse of discretion if "no reasonable person could take the view adopted by the trial court." *Id.*

■ Stewart recognizes that he has been denied all relief in the district court. However, he believes he is still a "prevailing party" under the catalyst or equivalency doctrine. The equivalency doctrine permits a party to "prevail" and recover attorneys fees if the lawsuit "produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—*e.g.,* a monetary settlement or a change in conduct that redresses the plaintiff's grievance." *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). Stewart claims that the defendants have altered their behavior in two ways in response to his lawsuit: (1) they transferred him to Logan in July of 1991, and (2) they have changed their policy regarding lockdowns.

Stewart must pass a two-part test in order to obtain the fees he seeks.

First, "the plaintiff['s] lawsuit must be causally linked to the achievement of the relief obtained," and second, "the defendant must not have acted wholly gratuitously, *i.e.,* the plaintiff['s] claim[ ], if pressed, cannot have been frivolous, unreasonable, or groundless."

*Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 566 (7th Cir.1983) (citing *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982)). Stewart does not make it past the first hurdle.

Stewart has the burden of providing facts that demonstrate the defendants' actions were the result of the lawsuit. *Pardo v. Hosier,* 946 F.2d 1278, 1285 (7th Cir.1991). To show that he was transferred to Logan as a result of his lawsuit, Stewart points only to a settlement letter written by his counsel which demanded a transfer to Logan. While the transfer did provide Stewart with some of the relief he sought (alleviation of conditions at Stateville), the letter, without more, fails to convince us that the transfer occurred in response to this litigation—particularly when Stewart was not transferred until fifteen months after his attorney sent the settlement letter.

Stewart argues that the defendants transferred him in an attempt to moot his claims—thus the transfer was related to the lawsuit. The record does not support Stewart's contention. The defendants never argued that Stewart's claims were moot before the district court; rather, the district court raised this issue *sua sponte.* Had the defendants advanced an alternate reason for Stewart's transfer, there could be little doubt that the lawsuit and the transfer were unrelated. However, it is Stewart, not the state, who bears the burden of proof on this issue, and he has not persuaded us that his transfer was causally related to this case.

Stewart has also failed to meet his burden of proof regarding the alleged change in

---

14. In light of our conclusion, we do not address Stewart's contention that IDOC procedures are lacking because an inmate is not entitled to an oral hearing on the issue of whether property is contraband, and because the grievance officer is not required to give reasons supporting his denial of a grievance.

lockdown procedures. The only support Stewart offers is a list of recent disturbances at Stateville that notes whether or not a lockdown was imposed following the disturbance, and, if so, the duration of the lockdown imposed. He claims that this list demonstrates that IDOC has changed their procedures to only permit short term lockdowns. This evidence alone is insufficient to establish the requisite causal link between the plaintiff's case and the defendants' behavior.

In sum, the district court did not abuse its discretion when it denied the plaintiff's motion for attorneys fees under § 1988. The plaintiff failed to prove a causal connection and the district court properly concluded that he was not a "prevailing party."

## IV. Conclusion

For the foregoing reasons, the district court's order granting summary judgment for the defendants is AFFIRMED.