Maurice D. HARDIMAN, Plaintiff,

v.

William HARTLEY, et al., Defendants.

No. S92–337.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 30, 1993.

Maurice D. Hardiman, pro se.

Wayne E. Uhl, Office of Indiana Atty. Gen., Indianapolis, IN, for defendants.

## ORDER

MILLER, District Judge.

No objection having been filed to the magistrate's report and recommendation filed on October 19, the court now ADOPTS the report and recommendation and directs that judgment be entered for the defendants and against the plaintiff.

SO ORDERED.

## REPORT AND RECOMMENDATION

PIERCE, United States Magistrate Judge.

Plaintiff, Maurice D. Hardiman, a former inmate at the Indiana State Prison ("ISP") at Michigan City, Indiana, brought this action *pro se* under 42 U.S.C. § 1983, claiming that the defendants violated his constitutional rights by withholding a macrame book and related craft supplies he had ordered by mail, and by charging him with disciplinary violations in retaliation for his filing of a state court action which sought compensation for the confiscated items. Named as defendants were William J. Hartley, Supervisor of Classification at the ISP; Barry L. Nothstine, Sr., Administrative Assistant at the ISP; and Correctional Officer Sue Hood. Pursuant to an Order of Referral entered by Judge Miller

on June 3, 1993, the undersigned conducted a bench trial at the ISP on October 14, 1993. This Report and Recommendation constitutes the court's findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

### Findings of Fact

At all times relevant, plaintiff, Maurice D. Hardiman, was an inmate at the Indiana State Prison in Michigan City, Indiana. On February 16, 1991, defendant Sue Hood, a correctional officer employed in the ISP's Special Purchases Department, approved a request by Mr. Hardiman to order a hobby kit through the mail from Nasco, an art and craft store in Wisconsin. Mr. Hardiman led Ms. Hood to believe that the kit contained string art (Defts' Ex. D, p. 11). However, when the kit subsequently arrived, Ms. Hood noticed that it contained a book entitled *Creative Macrame Projects*, along with various macrame craft items. Aware that macrame was not an approved hobby craft and that inmates were not allowed to possess macrame kits (Defts' Ex. D, p. 10), she took the kit to "Classification" (Defts' Ex. D, p. 13).

On March 18, 1991, Frederick M. Hurst, a correctional counselor assisting Classification Supervisor William J. Hartley, determined that the book and other items should be withheld, and so notified Mr. Hardiman (Pltf's Ex. 3). On the following day, Mr. Hurst made a similar finding with respect to a box of "T" pins, one of the items ordered by Mr. Hardiman which was back-ordered and arrived after the initial shipment. Mr. Hurst thereupon issued another written notice advising Mr. Hardiman that the "T" pins were being withheld (Defts' Ex. C). Both notices stated that the withheld items would be destroyed in 60 days if Mr. Hardiman did not appeal the decision.

Mr. Hardiman later appealed, but both Classification decisions were upheld on March 25, 1991. After the appeal process was concluded, Mr. Hardiman requested that all of the items be returned to the sender (Pltf's Ex. 20). All of the items, with the exception of the macrame book and "T" pins, were later mailed back to the craft store.

For some reason, the macrame book was retained, even though Mr. Hardiman was informed that it had been mailed back by the Classification section (Pltf's Ex. 7).

On May 2, 1991, Mr. Hardiman received a credit memo (Pltf's Ex. 8) and a refund from Nasco for all of the items except for the book and "T" pins. On May 8, 1991, he filed a grievance demanding $28.53 as reimbursement for the book and "T" pins which had not been returned to Nasco, together with shipping and restocking charges which Nasco had deducted from the amount of the refund (Pltf's Ex. 4). Following the completion of a staff factfinding investigation on May 21, 1991, Mr. Hardiman was given the following response to his grievance:

> ATTACHED REPORTS DO *NOT* CLARIFY WHETHER OR NOT *ALL* RECEIVED ITEMS WERE SENT BACK, OR EVEN *RECEIVED* AT THE INSTITUTION BY THE COMPANY. THE VENDOR TOOK RESPONSIBILITY BY SENDING ITEMS TO INSTITUTION, AND THE OFFENDER TOOK RESPONSIBILITY BY *NOT* INSURING ITEMS BEING RETURNED TO COMPANY. IT APPEARS THE LITIGATION WOULD FALL BETWEEN THE COMPANY AND THE OFFENDER, SINCE PAYMENT IS EVIDENTLY BEING REQUESTED TO THE COMPANY BY THE OFFENDER.

(Pltf's Ex. 4).

Apparently unaware of Mr. Hardiman's request that all of the items be returned to Nasco, Mr. Hartley destroyed the "T" pins on May 27, 1991. On June 4, 1991, ISP Superintendent Dick Clark denied Mr. Hardiman's grievance appeal, stating "[r]ecords reveal that the Classification section followed proper procedures. See June 4, 1991 memo." The June 4 memo referred to by Superintendent Clark erroneously stated that "[o]n April 19, 1991, the book was mailed back to the sender by the Classification section." The memo further indicated that "[t]he T-pens [sic] were held for 60 days and when the offender did not advise Classification what he wanted to do with them, they were destroyed on May 27, 1991." (Pltf's Ex. 7.)

Mr. Hardiman thereafter commenced a small claim suit in state court, seeking damages for the hobby craft items which had not been returned to Nasco (Defts' Ex. D). During the subsequent trial, which was held on February 20, 1992, Mr. Hardiman produced the withheld macrame book and introduced it into evidence. When questioned by the court about the elements of his damage claim, he stated that he had paid another inmate $15 to get the book from a prison storage room after prison officials advised him that the items had been destroyed on May 27. (Actually he was informed only that the "withheld item of March 19, 1991" the "T" pins—had been destroyed, according to plaintiff's exhibit 5.)

Also during the trial, Mr. Hardiman referred to and displayed an order form (Defts' Ex. E) as he was cross-examining Ms. Hood. She had testified that she was mislead by Mr. Hardiman into believing that he was ordering permissible string art items, rather than macrame, which was prohibited (Defts' Ex. D, p. 12). When she stated that she would not have approved the order if she had known that it was for a macrame kit, Mr. Hardiman produced the order form (Defts' Ex. E) which referred to a "Handcraft Macrame board."

Immediately after the trial, Ms. Hood showed Administrative Assistant Barry Nothstine (the ISP's court liaison official who was in attendance at the trial) a different order form (Defts' Ex. A). Ms. Hood advised Mr. Nothstine that the form shown on Defendants' Exhibit A was the order form Mr. Hardiman had submitted to her on February 16, 1991, and she pointed out that it did not contain the word "macrame."

Later on the same day, February 20, 1992, Mr. Nothstine issued two conduct reports to Mr. Hardiman. One of the reports, which was based upon Mr. Hardiman's admission that he had paid another inmate to take the macrame book from the storage room, charged him with "giving money or anything of value to or accepting same from any person without proper authorization" (Pltf's Ex. 13). This charge was later reduced to one based upon the unauthorized transfer of property. The other conduct report (Pltf's

Ex. 12) charged Hardiman with the offense of "counterfeiting, forging, or unauthorized reproduction of any document," based upon Mr. Nothstine's belief that Hardiman had forged the order form (Defts' Ex. E) which he had displayed during the small claim trial. This charge was subsequently dismissed for lack of evidence when Mr. Nothstine was unable to secure the order form from either of the Deputy Attorneys General who participated in the trial.

On March 5, 1992, the state court entered judgment in favor of Mr. Hardiman and against Mr. Hartley in the sum of $60.83, although the amount of the judgment was later reduced.

Following a disciplinary hearing conducted on March 26, 1992, Mr. Hardiman was found guilty of the unauthorized transfer of property and was given two weeks commissary restriction (Defts' Ex. F).

On April 2, 1992, Mr. Hardiman wrote a letter to William Hartley, referring to the small claim judgment and advising Hartley that

> if payment is not received by the court within 30 days from the date judgment was entered (3/5/92), I will contact the judge and ask to have a bench warrant placed upon you. I am writing you before this takes place to save you any unnecessary embarrassment.

(Defts' Ex. G).

On the same date, Mr. Nothstine, writing on behalf of Mr. Hartley, responded to Mr. Hardiman's letter as follows:

> Your correspondence has been forwarded to this office for response.

> Be advised, Mr. Hartley was represented by the Attorney General's office, reference Cause 46DO4–9111–SC–2253. Any correspondence regarding this matter will be directed to Mr. Michael Schoening, Deputy Attorney General, Attorney General's Office, 219 State House, Indianapolis, Indiana 46204.

> I would suggest you refrain from your attempt to intimidate Mr. Hartley with the suggestion of a bench warrant as that could be construed as being a threat under

the Adult Disciplinary Policy Procedure 1990.

Further correspondence regarding this matter will be directed to the Attorney General's office.

(Pltf's Ex. 15).

### Conclusions

■ Mr. Hardiman initially claims that the refusal by prison officials to deliver the macrame book and related craft supplies which he had ordered through the mail constituted a violation of his rights under the First Amendment. The Supreme Court, however, has held that the confiscation of prisoner mail is appropriate "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In this case, Mr. Hurst testified that the macrame book and supplies were withheld because the stronger yarn or string commonly used in macrame, combined with macrame knot tying techniques, could be used to make rope for use in escape and thus constituted a danger to institutional security. Maintaining institutional security and preventing escape are clearly legitimate penological interests, and Mr. Hurst's reasons for withholding the book and craft supplies were reasonably related to those interests. Accordingly, the court concludes that Mr. Hardiman's First Amendment rights were not violated.

■ To the extent that Mr. Hardiman's complaint and pre-trial contentions could be construed as raising a due process claim based upon the deprivation, loss or destruction of his property, such an assertion would be unavailing. In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that even the intentional destruction of an inmate's personal property during a prison shake-down search did not deprive the inmate of due process where state law provided him with an adequate post-deprivation remedy. *Id.,* 468 U.S. at 536, 104 S.Ct. at 3205. The court reasoned that a pre-deprivation hearing was not required "where the loss of property is occasioned by a random, unauthorized act by a state employee, rather than by established state procedure." *Id.,* 468 U.S. at 532, 104 S.Ct. at 3203.

In this case, the failure of prison authorities to return the macrame book and "T" pins to the craft store upon Mr. Hardiman's request, and the eventual destruction of the "T" pins, were unauthorized by any established state procedure. *See Stewart v. McGinnis,* 5 F.3d 1031, 1993 WL 369494, 1993 U.S.App. LEXIS 24686 (7th Cir.1993). Under these circumstances, state law, specifically the Indiana Tort Claims Act, provided Mr. Hardiman with an adequate post-deprivation remedy, and he availed himself of that remedy by bringing a small claim action in state court for the withheld or destroyed craft items. Consequently, Mr. Hardiman's right to due process was not violated.

■ Mr. Hardiman further contends that defendant Nothstine brought disciplinary charges against him in retaliation for his filing of the state court action. The evidence, however, fails to show that retaliation motivated Mr. Nothstine in bringing the disciplinary charges. Mr. Nothstine was not a party to Mr. Hardiman's state court action and would have little, if any, motivation to retaliate for a small claim suit seeking the value of macrame kit. More importantly, however, any inference of retaliation would be negated by the existence of adequate evidentiary support for the charges at the time conduct reports were issued. The existence of two different order forms for the craft materials, one containing the word "macrame" and the other omitting that word, Mr. Hardiman's use of the order form which did not contain the word "macrame," and defendant Hood's testimony in state court together with her report during the grievance investigation stating that "[t]he inmate did not tell me the truth about what he was ordering" (Pltf's Ex. 6), represents a sufficient factual basis for a disciplinary charge based on the falsification of evidence (Pltf's Ex. 12). Mr. Hardiman's own admission during the state court trial that he had paid another inmate to take the macrame book from the prison storage room represents a more than adequate basis for charging him with giving money or a thing of value to another person without proper authorization (Pltf's Ex. 13). The fact that the

first charge was dismissed due to a lack of evidence is explained by Mr. Nothstine's inability at the time to obtain the allegedly forged order form which Mr. Hardiman had displayed to defendant Hood during the state court trial. The reduction of the other charge to a lesser offense proves nothing where the charge was supported by a sufficient factual basis in the first place. Lastly, Mr. Nothstine's letter of April 2, 1992, on behalf of Mr. Hartley, does not suggest a retaliatory attitude or motive on the part of Mr. Nothstine. The letter was written after the conduct reports were issued and after Mr. Hardiman was convicted on the reduced charge by the Conduct Adjustment Board. It thus post-dated the allegedly retaliating act of filing the disciplinary charges and could not, therefore, support an inference of retaliatory intent. The letter was nothing more than an appropriate response to the letter which Mr. Hardiman had sent to Mr. Hartley earlier that day.

For the foregoing reasons, it is **RECOMMENDED** that plaintiff, Maurice D. Hardiman, take nothing by his complaint, and that final judgment be entered in favor of the defendants on all of the plaintiff's claims.

**ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.** See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.,* 797 F.2d 538 (7th Cir.1986).

Dated this 19th day of October, 1993.