**Nathaniel Allen LINDELL, Plaintiff–Appellant,**

v.

**John DOE, et al., Defendants–Appellees.**

**No. 01–2527.**

United States Court of Appeals, Seventh Circuit.

Submitted March 19, 2002.*

Decided Jan. 3, 2003.

---

* Appellees notified this court that they were never served with process in the district court and would not be participating in this appeal,

Before WOOD, Jr., ROVNER, and EVANS, Circuit Judges.

ORDER

After Nathaniel Lindell, an inmate in Wisconsin's prison system, failed to receive an issue of his prepaid subscription to *Pagan Revival* magazine, he sued various

which has been submitted without a brief from them. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R.App. P. 34(a)(2).

prison officials under 42 U.S.C. § 1983. The district court dismissed Lindell's complaint during initial screening under 28 U.S.C. § 1915A(b)(1). Lindell appeals, and although we affirm the district court's order in most respects, we vacate and remand a small part for further proceedings.

Lindell is currently incarcerated at the Supermax Correctional Facility in Boscobel, Wisconsin; the events relevant to this lawsuit occurred during his confinement at the Waupun Correctional Institution. Lindell subscribed to *Pagan Revival*, a magazine that he says expresses "Euro-centric" religious, philosophical, and political views and "discusses the struggles, thoughts and goals of the Euro-pagan community." Lindell never received issue #45 despite having paid for it, and when he learned that the magazine had been mailed to him, he filed a complaint within the prison. In response to his complaint, he was told that the issue arrived on or about October 27, 2000, was originally sent to the security office for review, but subsequently had been lost. Noting that inmate subscriptions to *Pagan Revival* cost $8, the prison reimbursed Lindell $2 for the cost of the lost issue.

Lindell then filed suit in federal court seeking damages against the following prison officials: J.C. Smits, a corrections officer working in the mailroom; Linda Alsum–O'Donovan, a complaint examiner; John Ray, a complaint examiner; Marc W. Clements, the security director; Cindy O'Donnell, a final decisionmaker on complaint recommendations; and John Doe, an unidentified member of the security office. Lindell alleged that his copy of issue #45 was not lost; rather, Doe personally seized or directed another to seize the issue in order to deprive him of it. Lindell explained that he had encountered problems in the past obtaining the maga-

zine, was never informed that security seized the magazine for review, and suffered harassment in the past for his Paganism. Lindell also alleged that the remaining defendants failed to investigate his claims, reveal Doe's identity, or tell him why the issue had been seized. Based on this alleged conduct, Lindell claimed that the defendants violated his First, Fourth, and Fourteenth Amendment rights.

Along with his complaint, Lindell sought leave to proceed *in forma pauperis*. Accordingly, the district court screened the complaint, *see* 28 U.S.C. § 1915A(b)(1), and dismissed all of the claims as frivolous or for failure to state a claim on which relief may be granted. We review the dismissal *de novo* and will affirm only if no set of facts supports the plaintiff's claims. *See Wynn v. Southward*, 251 F.3d 588, 591–92 (7th Cir.2001).

■ At the outset, we note that Lindell did not allege that any defendant other than Doe was personally involved in violating his constitutional rights, and therefore he failed to state a claim against any named defendant. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir.2000). That leaves only Doe, and all but one of Lindell's claims against Doe were properly dismissed.

■ Lindell contends that the initial seizure of his magazine violated the Fourth Amendment and that its retention deprived him of due process. Prisons may screen incoming publications, *Thornburgh v. Abbott*, 490 U.S. 401, 412–19, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), and prisoners have no expectation of privacy with respect to their property under the Fourth Amendment, *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Sparks v. Stutler*, 71 F.3d 259, 260 (7th Cir.1996). Prisoners do retain a right against intentional, unauthorized depriva-

tions of their property, *Hudson,* 468 U.S. at 530, 104 S.Ct. 3194; *Stewart v. McGinnis,* 5 F.3d 1031, 1036 (7th Cir.1993), but there is no constitutional violation when prisoners have an adequate post-deprivation remedy, *Hudson,* 468 U.S. at 536, 104 S.Ct. 3194; *Stewart,* 5 F.3d at 1036. Lindell acknowledges that pursuant to the prison's complaint procedures he was reimbursed for the cost of the magazine. This was an adequate post-deprivation remedy. *See Stewart,* 5 F.3d at 1036.

■ Lindell also claims that the seizure of the magazine violated his First Amendment right to the free exercise of religion. Prisoners do retain a right to the free exercise of religion, and restrictions on that right must be based on legitimate penological interests. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Sasnett v. Litscher,* 197 F.3d 290, 292 (7th Cir.1999). Lindell, however, did not even allege that his failure to receive the magazine interfered with his exercise of religion, or that the magazine had anything at all to do with his religious practices. Therefore, he failed to state a claim on this ground.

But Lindell's First Amendment claim that Doe intentionally deprived him of the magazine in violation of his right to freedom of speech does state a claim. Prisoners retain a First Amendment right to receive outside publications, and prison officials can restrict this right only if the restrictions are reasonably related to a legitimate penological interest. *Thornburgh,* 490 U.S. at 414–15, 109 S.Ct. 1874. The district court dismissed this claim for failure to state a claim "because [Lindell] has not alleged facts sufficient to suggest that the loss of his magazine was intentional." In addition, the district court relied on documents from the prison grievance process that Lindell attached to his complaint to show that he exhausted his administrative remedies. Even though Lindell specifically alleged that the factual scenario recounted by prison officials in their response to his grievances is false, the district court accepted it as true. Accordingly, the district court concluded that Lindell "has alleged no facts suggesting why this court should not believe respondents' conclusion during the processing of petitioner's internal complaint that the magazine was lost," and that it is "unlikely that respondent Doe exists."

■ The district court erred by dismissing Lindell's claim for not alleging sufficient facts showing that the deprivation was intentional, *see Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir.2002); *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002), and by taking as true the defendants' representations during the complaint process simply because the court found them more probable, *see Alston v. DeBruyn,* 13 F.3d 1036, 1039 (7th Cir.1994) ("An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely."). During the screening process under § 1915A, the district court should have looked at the complaint only, assuming as true the facts alleged and drawing inferences in Lindell's favor.

Along with specifically alleging a deprivation of his First Amendment rights, Lindell alleged facts that, if true, would support his claim. Lindell alleged that Doe disliked the views expressed in *Pagan Revival* as well as his Pagan beliefs and therefore intentionally deprived Lindell of the magazine and lied about it being lost. He specifically alleged that Doe seized the magazine "based on the content of the speech" and "based on [Lindell's] Pagan–Odinist religious beliefs." These allegations, if true, support the theory that Doe intentionally seized the magazine because he disliked its content. This is enough to

survive this stage of the litigation. Whether or not Lindell can prove his claim—that he was deprived of his magazine by intentional, not negligent, conduct—is a matter about which we express no opinion. We say only that the dismissal of this claim, at the screening stage of the proceedings, was premature.

Accordingly, we VACATE and REMAND Lindell's freedom-of-speech claim against "Doe," and the judgment dismissing the complaint in all other respects is AFFIRMED.